**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **Criminal No. <u>09-292</u>** |
| | ) | |
| **FRED WOOLUM** | ) | |

<u>**DEFENDANT'S MEMORANDUM ON SENTENCING**</u>

COMES NOW the defendant, Fred Woolum, by counsel, and states that he has no material objections to the presentence report ("PSR") or its calculation of an advisory Sentencing Guidelines range of 235 to 293 months, with a mandatory minimum of 20 years.

In the last few years, a number of District and Circuit Courts have begun to question the wisdom and fairness of the child pornography guidelines for possessors and/or distributors of child pornography, as opposed to actual child molesters or producers of child pornography, in light of recent US Supreme Court holdings and the history of the child pornography guidelines. The argument is essentially that the Guidelines are now advisory, that there is not a presumption that advisory guidelines are reasonable, that guidelines continue to be the starting point for a sentencing court and courts must consider them, that the sentencing court should impose the least possible sentence consistent with 18 USC 3553(a) factors, that when guidelines are not based on empirical data, they are entitled to less deference than normal, that the current child pornography Guidelines are the product of Congressional directives rather than empirical data, that the Guidelines produce inordinately high sentences for persons who never molest a child or produce child pornography, and that courts have the authority to reject the child pornography guidelines in appropriate cases for these and other reasons.

1

Mr. Woolum suggests that his case is one where the Court should consider the Guidelines, but should craft a sentence which is significantly lower than the Guidelines would seem to recommend.

## STATEMENT OF THE CASE

Fred Woolum does not dispute the obvious—he possessed graphic images of child pornography, and pled guilty to distributing a great many of these images, as part of a group operating on Multiply.Com.  The PSR does not suggest that he manufactured any images, inappropriately touched any children, or attempted to have sexual contact with minors during the time period covered in the indictment or at any other time.  He fully cooperated with authorities when they executed a search warrant, gave detailed statements, even though not under arrest, when initially contacted by authorities and during subsequent interviews after arrest.    See paragraphs 36-39 of the PSR.  He has given investigators further valuable information which demonstrates his remorse and a good faith attempt to "make things right".

## DISCUSSION AND ANALYSIS

### I.     THE ADVISORY GUIDELINE RANGE IS NOT TO BE PRESUMED REASONABLE

The Supreme Court has stated in the clearest possible terms that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors spelled out in 18 U.S.C. § 3553(a).  *Nelson v. United States*, 129 S. Ct. 890 (2009) (per curiam); *Kimbrough v. United States*, 128 S. Ct. 558 (2007), and *Gall v. United States*, 128 S. Ct. 586 (2007), establish the Guidelines as simply an

---

\* David J. Damico acknowledges that portions of this memorandum are based on a sentencing memorandum filed by Carolyn V. Grady, Assistant Federal Public Defender, Office of the Federal Public Defender, 701 E. Broad Street, Suite 3600, Richmond, VA 23219

2

advisory tool to be considered alongside the other 18 U.S.C. § 3553(a) statutory considerations. "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," the Court held in *Nelson*, 129 S. Ct. at 892, and "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Id.* (emphasis in original).

Although sentencing courts must continue to consider the Guidelines, Congress has required federal courts to impose the least amount of imprisonment necessary to account for the considerations and accomplish the sentencing purposes set forth in 18 U.S.C. § 3553(a). These include; (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory Guidelines range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a); *see also Kimbrough*, 128 S. Ct. at 570. After thorough consideration of a sentence under the guidance of 18 U.S.C. § 3552(a), a sentencing court may find that a particular case falls outside the "heartland" contemplated by the Guidelines, that "the guidelines sentence itself fails properly to reflect the § 3553(a) considerations," or that "the case warrants a different sentence regardless." *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007). Although a district court must begin its analysis by correctly calculating the advisory sentencing range, the sentencing court is then free, in light of the other statutory sentencing factors, to impose an entirely different sentence. This is because, under *Rita,* a district court is free simply to disagree, based on the 18 U.S.C. § 3553(a)

sentencing factors, with the Guidelines' "rough approximation" of the appropriate sentence for any given case. *Id.*

## II.     THE CHILD PORNOGRAPHY GUIDELINE IS NOT SUPPORTED BY AN EMPIRICAL BASIS AND, THEREFORE, WARRANTS LESS DEFERENCE THAN OTHER GUIDELINES PROVISIONS

Congress established the United States Sentencing Commission (hereinafter "USSC") "to formulate and constantly refine national sentencing standards." *Kimbrough,* 128 S. Ct. at 574; *see also Rita,* 127 S. Ct. at 2464.  In its institutional role, the USSC "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 128 S. Ct. at 574.

In general, the Guidelines were developed to reduce sentencing disparity, assure certainty and severity of punishment, and increase the rationality and transparency of punishment. *See* USSC, Fifteen Years of Guidelines Sentencing 11-12 (2004) available at http://www.ussc.gov/Research/Research_Projects/Miscellaneous/15_Year_Study/index.cfm [hereinafter "Fifteen-Year Assessment"].  Congress originally charged the USSC with developing guidelines to meet the "purposes of punishment" set out in 18 U.S.C. § 3553(a) (2), and to achieve proportionality, crime control through incapacitation and deterrence, and rehabilitation. *Id.* at 12-13.  Toward that end, the USSC developed and used data on past practices and recidivism in formulating the Guidelines.

The USSC departed from its practice of reviewing empirical data when setting offense levels for drug-trafficking, fraud, child exploitation, and sex offenses. Fifteen-Year Assessment, *supra*, at 15, 72-73; *see also Kimbrough*, 128 S. Ct. at 567.  From 1991 to the present, the USSC has increased the recommended Guidelines sentences for child pornography offenses in response to directives from Congress, and these increases have not been based upon empirical evidence.

4

*United States v. Grober*, 624 F.3d 592 (3d Cir. 2010) contains an extensive discussion of

this issue, citing the USSC Report, The History of the Child Pornography Guidelines (Oct. 2009)

(hereinafter the Report) available at:

http://www.ussc.gov/Research/ResearchProjects/SexOffenses/20091030_History_Child_Pornogr

aphy_Guidelines.pdf

   This publication describes the development of the child pornography Guidelines, which

have been substantively amended numerous times since 1987 and repeatedly highlights the role

that Congress has played increasing the base offense level from 13 in 1987 to the current levels,

adding a number of enhancements along the way. *Grober*, id, describes this history as follows:

 "In 1995, Congress again specifically directed the Commission to raise the base offense level for child pornography offenses by at least two levels and include at least a two-level enhancement if a computer was used to transport the child pornography. The Commission complied, but expressed concern that the computer enhancement would apply broadly, and without any distinction between offenders who used a computer to widely disseminate child pornography and those who "email[ed] images to a single voluntary recipient." United States Sentencing Commission, Report to the Congress: Sex Offenses Against Children at 30 (June 1996), available at http://www.ussc.gov/r_congress/SCAC.pdf. This Report to Congress also noted significant downward departure rates (for reasons other than substantial assistance) for sentences imposed under the child pornography Guidelines: 23% under § 2G2.2 and 13% under § 2G2.4.

In 2003, Congress, apparently without seeking any input from the Commission, which, of course, it was not required to do, passed the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"), which resulted in several significant changes to the child pornography statutes and Guidelines, including "the first and only time to date [Congress] directly amended the guidelines." The History of the Child Pornography Guidelines at 38. As the Second Circuit recently noted, the former United States Attorney for the Eastern District of New York described this statute as "the most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress." Dorvee, 616 F.3d 174, 2010 WL 3023799, at *9 (quoting Alan Vinegrad, The New Federal Sentencing Law, 15 Fed. Sent'g Rep. 310, 315 (June 2003)).

The PROTECT Act added the "image table" to both § 2G2.2 and § 2G2.4 which raised the offense level based on the number of images at issue, ranging from a two-level increase for at least ten images to a five-level increase for 600 or more images. It additionally added to § 2G2.4 a four-level increase for material portraying sadistic or masochistic conduct or other depictions

of violence (which the Commission included in § 2G2.2 in 1990). The Act also added a five-year mandatory minimum sentence for receipt and trafficking, and raised the statutory maximum from fifteen to twenty years for receipt and trafficking and from five to ten years for possession. The Act included general directives to the Commission to review the Guidelines, and in response, the Commission conducted several studies. The Commission concluded, for example, that the new amendments would more than double the average sentences under § 2G2.2 (from 42.8 months to 88.8 months) and nearly double the average sentences under § 2G2.4 (from 28 months to 54 months).

Effective November 1, 2004, the Commission again amended the Guidelines, consolidating § 2G2.4 into § 2G2.2. In response to the new minimum and maximum penalties set by Congress, the Commission set higher base offense levels for possession (increased from 15 to 18) and trafficking/distribution (increased from 17 to 22). The Report indicates that these offense levels were set below the mandatory minimum because "a majority of offenders sentenced under § 2G2.2 were subject to specific offense characteristics that increased their offense level." The History of the Child pornography Guidelines at 46 (citing the enhancements for computer use and material involving a prepubescent child, to which, at the time, 89.4% and 91.4% of offenders, respectively, were subject). The Commission was "concerned that setting the base offense level any higher than 22 for trafficking and receipt offenses would affect the proportionality of other guidelines," and, could, for example, call for a higher penalty than that typically imposed on a defendant convicted of conspiracy to commit murder and kidnapping. Id. at 47-48.

Importantly, the 2009 Report notes that the Commission has identified a review of the child pornography Guidelines as a policy priority, and that "[f]or the past several years, § 2G2.2 has had a high and increasing rate of downward departures and below-guideline variances." Id. at 54. Sentencing data bears out this observation. In fiscal year 2008, 35.7% of § 2G2.2 sentences were non-government-sponsored below-Guidelines sentences, compared to 13.4% of such sentences for all offenders. Id. at 8 n. 33. In fiscal year 2009, the percentage is even higher: 43.03% of § 2G2.2 sentences were nongovernment-sponsored below-Guidelines sentences, compared to 15.9% of such sentences for all offenders. United States Sentencing Commission, 2009 Sourcebook of Federal Sentencing Statistics, Tables 28 and N, available at http://www.ussc .gov/ANNRPT/2009/SBTOC09.htm. It bears mention, as well, that the Commission recently surveyed federal district court judges regarding their experience with, and opinions of, inter alia, the child pornography Guidelines, and found widespread dissatisfaction with § 2G2.2. United States Sentencing Commission, Results of Survey of United States District Judges January 2010 through March 2010 (June 2010), available at ttp://www.ussc. gov/Judge_ Survey/2010/Judge Survey_201006.pdf. Seventy percent of responding judges-and only judges who had sentenced defendants after Kimbrough and Gall were to respond to the questions with respect to § 2G2.2- reported that the Guidelines range for possession was too high, 69% said that the range for receipt was too high, and 30% believed that the range for distribution was too high."

In *Grober*, the 3d Circuit affirmed a District Court's decision to reject the defendant's base offense level of 38 and his Guidelines range of 235-293 months and impose a 60 month sentence.   The Court found that the District Court had adequately considered all appropriate factors, that the Sentencing Commission and other courts have issued opinions that support the District Court's decision, including its finding that section 2G2.2 was not developed pursuant to the Sentencing Commission's characteristic intuitional role and that a 5 year sentence under these circumstances was not an abuse of discretion, *Grober* also supported the District Court's findings criticizing some of the enhancements common to most child pornography cases.

"The enhancements "cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." (citing United States v . Dorvee, 604 F.3d 84 (2nd Cir 21010)).   The Dorvee Court noted, as did the District Court here, that many of these enhancements apply in almost all cases. See id. (noting that, of all the § 2G2.2 sentences imposed in 2009, 94.8% involved an image of a prepubescent minor, 97.2% involved a computer, 73.4% involved an image of sadistic, masochistic, or otherwise violent conduct, and 63 .1% involved 600 or more images); see also United States v. Tutty, 612 F.3d 128, 132 (2d Cir.2010) (noting that 96.6% of offenders sentenced under § 2G2.2 in 2009 received an enhancement based on the number of images possessed). Thus, "[a]n ordinary first-time offender is therefore likely to qualify for a sentence of at least 168 to 210 months, rapidly approaching the statutory maximum, based solely on sentencing enhancements that are all but inherent to the crime of conviction."

Another publication cited by *Grober* and worth reviewing for an in depth analysis of the history of the child pornography Guidelines is Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines (2008) [hereinafter "Stabenow"], available at:

http://www.fd.org/pdf_lib/child%20porn%20july%20revision.pdf.

A final factor which illustrates the potentially illogical sentences and lack of an empirical basis under the current Guidelines, including 2G2.6(a), can be demonstrated by examining the types of offense which are considered the "Guidelines equivalents" of Mr. Woolum's offenses.

7

The PSR computes Mr. Woolum's offense at a level 41 (base offense level 35; plus Prepubescent minors +4 and use of a Computer +2 ).

In order to approach a level 41, an offender would have to:

1) Commit murder (1st degree murder level 43 under 2A1.1; 2nd degree murder under 2A1.2 level 38);

2) Commit robbery, discharge a firearm, inflict permanent of life threatening injury, abduct someone and commit a carjacking (level 39 under 2B3.1);

3) Kidnap someone, using a weapon and hold them for ransom (level 40 under 2A4.1);

4) Steal more than $4 million from more than 50 victims (level 40 under 2B1.1);

5) Distribute more than 30 KG Heroin, 150 KG cocaine, 4.5 kilos crack, or 30,000 kilos of marijuana (level 38 under 2D1.1);

6) Highjack a plane (level 38 under 2A5.1);

7) Commit espionage (top secret material is level 42 and less than top secret is level 37 under 2M3.1);

8) Aggravated sexual battery with child under age 12 in violation of 18 USC 2241c carries a base offense level of 38 (under 2A3.1) which is raised another 3 points if  victim sustained serious but not life threatening bodily injury.

Offenses which would seem to be much more serious than distribution of child pornography carry significantly lower guidelines: e.g., providing material support to foreign terrorists carries a base offense level of 26 (under 2M5.3), with a 2 point addition for weapons or explosives; Drunk driving resulting in death carries a base offense level of 26 (under 2D2.3); Arson by explosives carries a base offense level of 24 (under 2K1.4) if there is a substantial risk

of death or bodily injury or destruction of dwelling, mass transportation facility or government facility; Attempted murder with permanent or life threatening injury carries a base offense level of 33 + 4 (under 2A2.1); Abusive sexual contact of a victim under age 12 carries a base offense level of 24 (under 2A3.4).

Of course, pointing this out is in no way intended to minimize the suffering victims of child pornography undergo. However, Courts are in the business of grading or ranking offenses and offenders in trying to arrive at an appropriate sentence under 18 USC 3553(a). Certainly, a sentencing scheme which ranks distributing child pornography, even as part of a Child Exploitation Enterprise, as more serious and more dangerous than murder, robbery, terrorism and air piracy is fatally flawed.

As the *Grober* court noted at id, p.8, "The nature and circumstances of his offense are at the core related to consumption. Compared to the predators who performed the abuse on the children depicted in the pornography Grober downloaded, Grober's conduct is manifestly less culpable. In so holding, the Court rejects the government's argument in its … sentencing memorandum that there is no need to distinguish between abusers and producers on the one hand, and consumers on the other. Of course there is a need to do this—pure common sense requires it. This does not minimize what David Grober did, or his towering insensitivity to the underlying acts portrayed, or the concept that voyeurs revictimize the children in the images by looking at them. But the Court cannot make Grober a surrogate for the monsters who prey on child victims through actual contact."

### C.    Courts in Various Jurisdictions Are Departing From The Guidelines

A number of district courts in addition to *Grober* have recognized the merit of these arguments and have departed significantly from the Guidelines.

In *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa 2009) the District Court for the Northern District of Iowa found a 90-month sentence sufficient but not greater than necessary despite the suggested Guidelines range of 210 to 262 months.

The district court in *Beiermann* expressed two policy objections to the child pornography guideline. First, it determined that "the [child pornography] guideline does not reflect empirical analysis, but congressional mandates that interfere with and undermine the work of the Sentencing Commission." *Id.* at 1104. "Because of congressional manipulation, this advisory guideline 'is not a reliable indicator of the Sentencing Commission's perspective on a fair sentence.'" *Id.* at 1104. Second, the court found that the child pornography guideline "illogically skews sentences for even 'average' defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability." *Id.* at 1105.

The *Beiermann* court also recognized that the enhancements in the child pornography guideline often impose illogical results. For example, the enhancements "can have the effect of imposing a higher sentence on a defendant for trading child pornography than could be imposed on a defendant who actually coerced a young child into sex or who repeatedly raped a prepubescent child." *Id.* at 1106 (citing Stabenow, *supra*, at 26). Finally, the court found that even when the enhancements are relevant to distinguish defendants, "some of them are given too much weight." *Beiermann*, 599 F. Supp. 2d at __.

Likewise, in *United States v. Hanson*, 561 F. Supp. 2d 1004 (E.D. Wis. 2008), the defendant's Guidelines range for possession and distribution of child pornography was 210 to 262 months. The court disagreed with the child pornography guideline and imposed a sentence of 72 months in large part because the guideline "contains numerous and significant enhancements for factors that are present in many if not most cases, diverges significantly from the Sentencing Commission's typical, empirical approach, and produced a sentence greater than necessary to provide just punishment in this case." *Id* at 1008.

The district court in *Hanson* made numerous observations concerning the unreliability of the child pornography guideline. For example, it found that the child pornography guideline

10

"has been steadily increased despite evidence and recommendations by the Commission to the contrary," the Congressional amendments are "ostensibly to target mass producers of child pornography and/or repeat abusers of children, a class of offenders that make up less than 5% of those affected by the changes," and "[b]etween 1994 and 2007, the mean sentence in child pornography cases increased from 36 months to 110 months" due to "arbitrary increases by Congress slipped into other bills, often with little or no debate." *Id*. at 1009.

Paragraph 47 of the PSR has added two points, pursuant to 2G2.6(b)(4) of the Guidelines, for use of a computer in furtherance of the offense and four points for victims under age 12, pursuant to 2G2.6(b)(1).   As the *Hanson* court noted:

" The guideline for this offense, which contains numerous and significant enhancements for factors that are present in many if not most cases, diverges significantly from the Sentencing Commission's typical, empirical approach, and produced a sentence greater than necessary to provide just  punishment in this case.  See 18 U.S. C. 3553(a)(2)(A).  …, the enhancements for use of a computer and images containing children under age twelve are typical of this crime." *Id*, at 1008-1009

*United States v. Shipley,* 560 F.Supp.2d 739 (S.D. Iowa, 2008*)* (imposing a 90-month sentence where the Guidelines recommended 210-240 months); *United States v. Rausch*, 570 F. Supp. 2d 1295, 1297 (D. Colo. 2008) (finding that "when Congress ignores the recommendations and studies of the Sentencing Commission as it did with [the child pornography guidelines], . . . [it] thereby negates the rationale for affording such weight to [those guidelines]").

As these cases illustrate, sentencing courts across the nation are finding that the current child pornography guideline yields unjust and illogical sentencing recommendations. Nationwide statistics confirm that many courts are adjusting sentences downwards in child pornography cases, even if they are not writing full blown opinions.  The most recent available data shows that, excluding cases involving government sponsored reductions (substantial assistance), courts

departed or varied downward from the § 2G2.2 Guideline range in over 38 percent of cases. United States Sentencing Commission's Sourcebook of Federal Sentencing Statistics (2009) at http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2009/SBTOC09. htm.

That rate was more than double the national below-range percentage of approximately 16 percent for the same time period.  *Id.*  It also represented the highest below-range percentage for any single category of Guideline, for which there were at least 1,000 reported sentences.  The other categories with that volume of sentences featured below-range percentages of as little as three percent to as much as 23 percent, but none close to the 38 percent featured for § 2G2.2 cases.  *See id.* (noting over 1,000 sentences for § 2B1.1 fraud cases (21.3%), § 2B3.1 robbery cases (19.3%), § 2D1.1 drug cases (17.6%), § 2K2.1 gun cases (21.5%), § 2L1.1 immigration harboring cases(9.9%), § 2L1.2 unlawful reentry cases (3.4%) and §2S1 money laundering cases (23.2%)).

Although this court is statutorily required to consider the Guidelines, they are not to be presumed reasonable.  This court is free to conclude, and should conclude, that Mr. Woolum's recommended Guidelines range does not warrant deference and that a sentence within this Guidelines range far exceeds that which is sufficient, but not greater than necessary, to comply with the requirements of 18 U.S.C. § 3553(a).

### III.    A SUFFICIENT SENTENCE UNDER 18 U.S.C. § 3553(A)

The nature of the offense is straightforward:  Mr. Woolum possessed many images of child pornography and transferred and traded these images by the internet on many occasions. Child pornography, without question, is a pernicious societal evil. Mr. Woolum acknowledges that his offense is serious and has real consequences for the victims of child pornography.  In

terms of relative egregiousness, however, Mr. Woolum's crime falls well below that of the child pornography producer or child molester whose crimes involve the actual abuse of a child by the offender. The court should take notice of this relative culpability when determining an appropriate sentence for Mr. Woolum. Obviously, Mr. Woolum will and should receive a significant sentence, but that sentence should be commensurate with the harm done, the individual characteristics of Mr. Woolum and the other factors in 18 USC 3553(a).

In making its sentencing decision, this Court should also consider that many of Mr. Woolum's characteristics, such as his lack of a significant criminal history and good work record, make him an unlikely candidate for re-offense. Counsel suggest that a sentence in the range of 120 months would be adequate to accomplish the goals of 18 USC 3553(a).

*s/* **David J. Damico**
David J. Damico, Esquire
Virginia State Bar ID No. 16229
Counsel for the Defendant
P.O. Box 1578
Roanoke, VA 24007-1578
DJD@damicolawfirm.com
O 540 343 0888
F 540 345 0275

*/s/* **Sally A. Frick**
Sally A. Frick
Attorney for Defendant
Pa. I.D. #27672
1601 Frick Building
437 Grant Street
Pittsburgh, PA 15219
412/261-3340
412/261-9211 FAX

### CERTIFICATE OF SERVICE

I hereby certify that on this the 3rd day of February, 2011, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following: Craig Haller, Assistant United States Attorney.

*s/*   ***David J. Damico***
David J. Damico, Esquire
Virginia State Bar ID No. 16229
Counsel for the Defendant
P.O. Box 1578
Roanoke, VA 24007-1578
DJD@damicolawfirm.com
O 540 343 0888
F 540 345 0275

14